[Civ. No. 4846. First Appellate District, Division One.—June 6, 1925.]

## WM. E. UMPHRAY, Respondent, v. HENRY HUF-SCHMIDT, Appellant.

[1] BROKER'S COMMISSIONS — EXPIRATION OF CONTRACT — WAIVER OF TIME LIMITATION.—Where an agency contract for the sale of real property, by its expressed terms, expired on a specific date, but the transaction involving the sale of the property was a continuing one from the time of the making of such agency agreement up to the time of the deposit by the vendor with the title insurance company, some days after the said date of expiration of the agency contract, of the necessary deed of conveyance, accompanied by written instructions directing said escrow-holder to close the deal within ten days thereafter upon the terms stated in said instructions, which terms were absolutely the same as set forth in the agency contract, and in continuation of those negotiations, and in direct response to, and within the limitation of time fixed by, said escrow instructions, the vendees presented themselves to the escrow-holder ready, willing and able to consummate the purchase of the property in accordance with the requirements of said escrow instructions, but the sale was not consummated because the vendor had previously withdrawn the document from escrow, the vendor waived the limitation of time fixed by said agency contract for the sale of the property.

---

1. Necessity that authority of agent to purchase or sell real property be in writing to enable him to recover compensation for his services, notes, 44 L. R. A. 601; 9 L. R. A. (N. S.) 933. See, also, 4 Cal. Jur. 575; 4 R. C. L. 300.

[2] ID.—ABSENCE OF VALID CONTRACT OF PURCHASE—FAILURE TO BRING VENDOR AND VENDEE TOGETHER PERSONALLY — COMPENSATION EARNED.—The agent's claim to commissions for his services in said transaction cannot be avoided upon the ground that he neither obtained from the prospective purchaser a valid contract of purchase nor during the negotiations brought the vendor and the vendees together personally. A written contract between the vendor and the purchaser is not essential to a recovery of the broker's commission if he has produced to the vendor a purchaser who is ready, willing and able to purchase upon the terms proposed by the vendor and who has agreed to those terms and is willing and offers to enter into a binding written contract; and the broker has performed his duty and has earned his commission regardless of whether a contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price.

[3] ID.—PLEADING—QUANTUM MERUIT—WRITTEN CONTRACT—EVIDENCE. A recovery may be had for reasonable value of services in an action based on a common count, although the proof shows a written contract; and in such an action the contract itself serves as competent evidence upon which a finding as to the reasonable value of the services may be made.

[4] ID.—ABSENCE OF TITLE IN PRINCIPAL—RIGHT TO COMPENSATION.— A real estate broker is not to be denied the right to recover commissions merely because title to the property was not vested in his principal, of which fact the broker was aware at the time the agency contract was made.

(1) 4 C. J., p. 885, n, 39; 9 C. J., p. 608, n. 90.   (2) 9 C. J., p. 596, n. 33; p. 597, n. 36; p. 624, n. 68.   (3) 13 C. J., p. 750, n. 73, p. 775, n. 89 New; 30 Cyc., p. 2842, n. 52, p. 2849, n. 16.   (4) 9 C. J., p. 585, n. 90, p. 586, n. 93.

APPEAL from a judgment of the Superior Court of Alameda County. H. D. Burroughs, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Edward R. Eliassen for Appellant.

H. S. Craig for Respondent.

2.  See 4 Cal. Jur. 590; 4 R. C. L. 307.
3.  See 28 R. C. L. 691.

KNIGHT, J.—An action to recover real estate broker's commissions, alleged to be of the reasonable value of $1,000, for which amount judgment was given in favor of plaintiff. Defendant appeals.

On April 21, 1922, Hufschmidt, the appellant, made a written contract with Umphray, the respondent, whereby, in consideration of a small cash payment and the prospective services of respondent as agent, he agreed to deed to respondent, or to any grantee the latter might name, at any time within thirty days, for the sum of $12,000 net, a tract of land situate on Holway Street, Oakland, the purchase price to consist of the payment of the sum of $7,000 in cash and the delivery of a mortgage for the balance covering certain real property in San Leandro, Alameda County; said contract further provided that as commissions for services rendered, respondent should be paid all money received from the sale of the property over and above the sum of $12,000. Appellant was at no time the owner of said property, title thereto being vested in the names of his daughter and other relatives, of which fact respondent was aware at the time the contract was entered into. Thereafter respondent procured a buyer named Page, who agreed to pay $13,000 for the property. Page was acting in the matter for himself and one Nason, with whom he was engaged in certain building enterprises under an arrangement existing between themselves whereby Nason furnished the capital, took title to real property in his name, and Page afterwards erected improvements thereon for an interest in the property. On May 22, 1922, Page deposited with a title insurance company, as part payment on the purchase price, certain securities, of which Nason was the owner, representing in the aggregate the sum of $1,769.74. Those securities were not acceptable to appellant, but the parties continued on with their negotiations and Page finally agreed to meet appellant's terms, that is, to deliver in payment of the purchase price a mortgage on said San Leandro property for the sum of $5,000 and to pay the balance in cash. Pursuant to this arrangement appellant, on May 29, 1922, obtained from the owners and deposited with said title insurance company an executed deed to said Holway Street property in which the name of the grantee was, at respondent's suggestion, left

blank.   The deposit of said deed was accompanied by written escrow instructions, signed by appellant, in which said title insurance company was authorized to deliver said deed to the purchaser upon receipt of a note for the sum of $5,-212.50, secured by a deed of trust covering said San Leandro property, a sixty-day note for $200 signed by Nason, an agreement that the buyer assume payment for street work adjoining said Holway property amounting to $3,120.63, and the payment of the sum of $3,466.87 in cash; said escrow instructions fixed ten days from the date thereof as the period of time within which to complete the sale, and further provided that in the event that the conditions of said escrow were not complied with at the expiration of the date specified therein said company should complete the same at the earliest possible date thereafter, unless written demand by appellant was made for the return of all instruments deposited; whereupon Page, a day or two thereafter, withdrew the securities previously deposited.   Later, on or about June 1, 1922, and well within the ten days specified in said escrow instructions, the purchasers called at the title insurance company's office prepared to consummate the purchase of said property in accordance with the terms of said escrow instructions, but were informed that about an hour or two prior to their arrival the prospective sale had been canceled by the other parties to the agreement by the withdrawal of the deed and the escrow instructions.   About four months later Nason and Page, after further negotiations with the owners personally, purchased said property for the sum of $13,000, title thereto being conveyed to Nason by delivery to him of the same deed deposited with, and afterwards withdrawn from the possession of, said title insurance company.   These subsequent negotiations were carried on by the parties themselves without the knowledge or aid of respondent.   The sale was a cash transaction, except as to the matter of the payment for street work, payment therefor being assumed by the purchasers.   When respondent learned of the sale of said property he demanded a commission of $1,000 and upon refusal of appellant to pay the same commenced this suit with the result already stated.

[1]   The position taken by appellant upon the merits of the controversy, and in support of which he has cited a number of authorities, is as follows: That the contract upon

which respondent's cause of action is founded expired by limitation of time on May 22, 1922, and that inasmuch as no sale was made within that period the contractual relationship of the parties at that time ended; that the circumstances of the deposit of the deed in escrow, accompanied by the escrow instructions, constituted an independent transaction, embodying a new offer which was disassociated with said contract of agency, and which offer appellant had power to withdraw at any time before the same was accepted; that having in fact withdrawn said offer before it was accepted no liability for commissions was incurred; that the sale of the property four months later was the result of separate negotiations opened by the purchasers with the owners of the property personally and that the sale was made upon terms different from those previously agreed upon under the agency contract; that respondent did not participate in the ultimate sale of said property and consequently was not entitled to a commission thereon.

There is sufficient evidence in the record to show, however, that the transaction involving the sale of the property was a continuing one from the time the agency contract was made until and including the time appellant made the escrow deposits; that although the contract of agency according to its terms would have expired on May 22, 1922, appellant continued on with the negotiations through respondent, the result of which was that on May 29, 1922, he deposited in escrow the deed to the property, accompanied by written instructions directing the escrow-holder to close the deal within ten days thereafter upon the terms specified in said instructions, and which terms were substantially the same as those set forth in the contract of agency; it further appears that in continuation of those negotiations, and in direct response to, and within the limitation of the time fixed by, said escrow instructions, the buyers presented themselves to the escrow-holder ready, willing and able to consummate the purchase of the property in accordance with the requirements of said escrow instructions; that the only reason why the sale was not completed at that time was that the documents had been withdrawn from escrow. Under those circumstances it must be held that appellant waived the limitation of time fixed by respondent's contract of agency for the sale of the property. True, evidence was

offered by appellant to show that on the day of, but prior to the withdrawal from escrow of said deed and written instructions, respondent stated to one of the owners of the property that his contract for the sale of the property had expired; but this evidence was contradicted on behalf of respondent by a witness who was present at the time it is claimed the statement was made. The ascertainment of the truth of this disputed conversation was therefore a matter of determination for the trial court.

[2] We are also of the opinion that under the circumstances disclosed by the record respondent's claim to commissions cannot be avoided upon the ground that he neither obtained from the prospective purchasers a valid contract of purchase nor during the negotiations brought appellant and the purchasers together personally, for it is the established law of this state that a written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price. (*Twogood* v. *Monnette,* 191 Cal. 103 [215 Pac. 542].)

The evidence shows, as before stated, that appellant, in writing, constituted and appointed said title company his agent to complete the sale, and deposited with said company all of the necessary documents for that purpose, which included an executed deed to the property and written authority to receive the purchase price and deliver the deed; that within the extension period fixed by said escrow instructions, to wit, on or about June 1st, the purchasers were present personally at the office of the title company ready, able and willing to meet the escrow terms and to pay the purchase price and accept the deed, but were prevented from doing so by the act of appellant and the sellers in canceling the sale. Under such circumstances, and in view of the rule stated in *Twogood* v. *Monette, supra,* we believe that respondent was, at that time, entitled to his commis-

sions. It matters little whether or not appellant ever met the purchasers personally during the negotiations, for the reason that he had vested said title company with full power to consummate the sale and it was at the title company's office that the purchasers appeared ready to close the sale; and it is also immaterial whether or not Page or respondent were there at that time, although it would seem that they were, because each testified that he was. Nason was there, and he testified positively that at that time he was prepared to pay the cash and turn over the securities in payment of the purchase price. Nason cannot, therefore, be considered an undisclosed principal, as appellant contends; and in any event the evidence shows that Page and Nason were at all times jointly interested in the purchase of the property and although title was afterwards conveyed to Nason, the property was nevertheless acquired for the benefit of both Page and Nason.

[3] We are unable to sustain appellant's contention that there was a fatal variance between the allegations of the complaint and the proof, in that the complaint was based upon a *quantum meruit,* whereas the proof established a written contract, for the reason that irrespective of whatever the rule may be in other jurisdictions, it has been held in this state that a recovery may be had for reasonable value in an action based on a common count although the proof shows a written agreement; and in such an action the contract itself serves as competent evidence upon which a finding as to the reasonable value of the services may be made. (*Naylor* v. *Adams,* 15 Cal. App. 548 [115 Pac. 335]; *San Joaquin L. & P. Co.* v. *Barlow,* 43 Cal. App. 241 [184 Pac. 899].) [4] Nor do we think that respondent must be denied relief because appellant was not vested with ownership of the title to the property, and of which fact respondent was aware at the time the contract was made, because the payment of commissions is purely a matter of contract, and it is immaterial, so far as concerns the right of the broker to recover, whether the party to be charged under the contract is or is not the owner of the land to be sold. (*Sanchez* v. *Yorba,* 8 Cal. App. 490 [97 Pac. 205].) Moreover, the evidence shows that after the contract of agency was made appellant obtained from the owners the execution and acknowledgment of a deed to the property with the

grantee's name left blank, and of which deed he was given absolute control; that he deposited said deed in escrow, and signed the escrow instructions authorizing and directing delivery to the purchaser on complying with the escrow instructions; that after the deed was withdrawn from escrow it was kept in appellant's possession in his safe-deposit box, for approximately four months, and eventually was delivered to the purchaser in consummation of the sale. Under those circumstances we think appellant may not escape the liability under his contract to pay commissions upon the ground that he was not the owner of the property.

Lastly, it is urged that commissions cannot be allowed for the reason that the escrow instructions required the payment of a purchase price aggregating only $12,000. But the testimony of both Page and Nason proves that they had agreed and were prepared to pay a purchase price of $13,000, which testimony was corroborated by the evidence of respondent; it is therefore obvious that the specific items of payment called for by said escrow instructions, and which aggregated only $12,000, related to the net amount the vendor was to receive for the property and not to the gross amount the purchasers had agreed to pay therefor.

We are of the opinion that the judgment should be affirmed, and it is so ordered.

Tyler, P. J., and Cashin, J., concurred.