[Civ. No. 18484. Second Dist., Div. Three. Dec. 28, 1951.]

ISEDORE GROSSBLATT et al., Respondents, v. LAURENCE E. WRIGHT, Appellant.

Bernard B. Cohen for Appellant.

Harry A. Franklin for Respondents.

VALLÉE, J.—Appeal by defendant from an adverse judgment in an action to recover treble damages, attorney's fees and costs under the United States Housing and Rent Act of 1947.[1] At the time involved, June 14, 1948, the Housing and Rent Act of 1947, in pertinent part, provided: "Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed . . . shall be liable to the person from whom he demands, accepts, or receives such payment . . . for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceed the maximum rent which would lawfully be demanded, accepted, or received, whichever in either case may be the greater amount . . ."[2] In the present case the amount found to have been demanded and accepted in excess of the maximum rent which could be lawfully demanded and accepted was $1,300.

After the cause was at issue defendant-appellant made timely written demand for a trial by jury, posted the jury fee, and the cause was set to be tried by a jury.

When the cause came on for trial, plaintiffs moved the court for an order "that the jury be dissolved" and the cause be tried by the court without a jury on the ground defendant had no right to a trial by jury. Counsel for defendant vigorously, persistently, and at length, opposed the motion and contended he was entitled to a trial by jury. The motion was taken under submission and a jury empaneled. Prior to the taking of any evidence the motion was granted and the jury discharged. The relevant proceedings which took place with respect to the motion are set out in the margin.[3]

Defendant first contends the court erred in denying him

---

[1] 61 Stats. 193; 50 U.S.C.A. App. § 1881 et seq.

[2] 61 Stats. 199; 50 U.S.C.A. App. § 1895.

[3] "THE COURT: The objection of the plaintiffs to proceed to trial with a jury in this case was previously submitted for decision by the Court . . .

"The Court has been researching this subject almost continuously since the matter was argued, and I have about come to the conclusion, gentlemen, that a jury cannot be had as a matter of right in this type of action. . . . I think we must conclude that no such cause of action or form of action existed at common law because the right to fix prices and fix rents by governmental action did not exist in common law, and

a trial by jury. Plaintiffs say defendant did not except to the

---

it is only through a violation of such a statute that any right of action exists in this present proceeding.

"So regarding the substance of the action rather than the form of it, I think it is one that did not exist at common law and, therefore, under the authorities, a trial by jury is not a matter of right. . . .

"MR. COHEN [Attorney for defendant]: . . . If the Court feels disposed to grant the plaintiffs' motion, depriving the defendants of a jury, I will ask the Court to give me an opportunity to prepare a writ of prohibition to submit to the District Court of Appeal so that we can obtain an alternative writ there, if the Court deems it proper and will not require us to go to trial without a jury. Could the Court do that? . . .

"Excuse me, your Honor. I am trying to protect my record, and I don't know whether I should make this request now or after the Court rules. The Court indicated prior to the noon recess that the Court felt that we were not entitled to a jury as a matter of right, and the Court also said it was within the Court's discretion to grant a jury. And at this time I am asking your Honor to exercise that discretion and grant Mr. Wright, the defendant in this case, a trial by jury. . . .

"THE COURT: . . . I think that the law, as I have attempted to outline it here, requires this Court to hold that in California at least the precedents are to the effect that a jury may not be had as a matter of right in this proceeding, and that is the holding of the Court.

"MR. COHEN: I will ask your Honor, in the exercise of the Court's discretion, if the Court will grant us the privilege of a jury trial in this case? . . . so at this time I will ask your Honor to give me the opportunity to prepare the necessary papers to submit to the District Court of Appeal and request that a writ of prohibition issue, because I feel that if we should go to trial and your Honor should find against us, that under the law, the authorities, an appeal from this judgment would not be a speedy remedy at law. So I will ask the Court to give us the opportunity to do that. . . . It may be that when we submit the papers to the District Court of Appeal the court may agree that we don't have the right to trial by jury, and then we will proceed to trial. But a writ of prohibition is proper if your Honor is wrong and we are right in the case. . . . I am not at all convinced in my own mind that the ruling is proper, and I feel I owe a duty to my client to pursue the remedy, and I feel it is a proper remedy to seek. . . . and I am simply asking that I be given an opportunity, even until Monday morning. I will work over the week-end, although I was going fishing, and I will prepare a writ and submit it to the Presiding Justice of the District Court of Appeal and, if he sees fit to sign an alternative writ, all right.

. . . . . . . .

"In connection with the case of Grossblatt against Wright, this morning after having spent a total of 24 hours preparing the petition for writ of prohibition that we discussed in your Honor's chambers last Friday, I went to the office of the clerk of the District Court of Appeal and was informed by the clerk this morning at 9:15 that in the ordinary course of events the court will not issue an alternative writ until five days have elapsed, during which time the respondent has the right of filing an answer to the petition.

"I explained to the clerk the circumstances here, that is, that your Honor had continued this matter for trial to 10:00 a.m. this morning, and he said that under such circumstances it is possible, but not at all a certainty, that the District Court of Appeal might waive the five-day period for the answer to be filed and decide that matter today, but that he couldn't guarantee it, so that now we are in a position, your Honor, where because of the exigencies of the situation, if I filed a petition up

ruling, therefore the point is not available to him on appeal.[4] Defendant answers that his conduct was equivalent to the taking of an exception and that is all the law requires.

Section 646 of the Code of Civil Procedure defines an exception as ''an objection upon a matter of law to a decision made'' and provides ''The exception must be taken at the time the decision is made, except as provided in section six hundred and forty-seven.'' Section 647 enumerates various matters which are deemed excepted to. An order denying a trial by jury is not among them, and an exception was required.

The first enactment on the subject of exceptions was the Statute of Westminster II,[5] which provided that a litigant might except to the rulings of the court in the progress of the trial, embody his exceptions in a bill of exceptions, and have the bill of exceptions made part of the record for purposes of review. The practice had real merit when its primary purpose was the preparation of a bill of exceptions for an appeal and there were no stenographic reporters or the record in the trial court was sketchy and incomplete. Now that we have a

there, if this trial proceeds today and we conclude it, say, tomorrow afternoon or some time Wednesday, the matter of the petition for writ of prohibition will become moot, and so I have no alternative but to ask your Honor to continue this case to a time far enough away so as to enable the District Court of Appeal to act on our petition, or to set it off calendar subject to being reset after the District Court of Appeal does act. . . .

''THE COURT: . . . the cases are numerous to the effect that where money is all that is involved that an appeal is an adequate remedy and, of course, execution would be stayed pending appeal, so that the defendant wouldn't even be out his money during that time. . . . I am satisfied by independent research I have made also since our last discussion of the matter that this is not a proper case for the issuance of a writ, and I don't believe it would issue, so the request for continuance is denied.

''MR. COHEN: Then in that event, your Honor, I shall not file the writ of prohibition because I think we are agreed it would become a moot question because this case will have been determined by that time, that is, by the time the Appellate Court had an opportunity to act on the writ, and I assume by your Honor's statement that we are now required to proceed with the trial; is that true?

''THE COURT: Yes.

''MR. COHEN: And may the record show, your Honor, that we are again demanding a jury trial of this matter, and we would ask your Honor to rule on that motion at this time.

''THE COURT: The motion is denied.

''MR. COHEN: Thank you, your Honor.''

[4]*Estate of Magerl,* 201 Cal. 162, 167 [256 P. 204]; *Snidow* v. *Hill,* 100 Cal.App.2d 31, 36 [222 P.2d 958].

[5]13 Edw. I, c. 31 (1285); 1 Eng. Stats. at L. 99; Holdsworth, History of English Law (1903) 91-2; 23 W.Va.L.Q. 15.

complete record of the proceedings in the trial court, the necessity for an exception in order properly to prepare a record on appeal has disappeared.[6] Its use now makes form a fetish. The necessity of an exception has been dispensed with in the federal courts and in a number of states.[7]

Our statute which lists a great many matters that are deemed excepted to and omits a few to which an exception must be taken is a snare for the unwary. The distinction between those matters deemed excepted to and those not is purely fanciful and arbitrary. Everything accomplished by an exception is achieved by the requirement that the grounds of an objection be stated. An objection or opposition to proposed action indicates a party's dissatisfaction with what is proposed. If, after an objection or opposition to proposed action is overruled, a party takes an exception, he is merely repeating his dissatisfaction.[8]

The courts have stated the functions of an exception as: (1) to make the ruling a matter of record so that it may be reexamined by the court on a motion for a new trial or be reviewed by an appellate court;[9] (2) to apprise the trial court that its ruling is challenged, and thereby enable it to reconsider its ruling and correct the error if it be such.[10]

The purpose of an exception is not ritualistic; it is real.[11] It "is only a formal type of objection."[12]

[6]In *People* v. *Mitchell*, 27 Cal.2d 678 [166 P.2d 10], the court commented, p. 686: "The widespread use of the reporter's transcript as the record on appeal and the modernization of the bill of exceptions into a narrative statement of the proceedings (see Rules on Appeal, rule 7), have resulted in the practical disappearance of the formal exception in appellate procedure in this state."

[7]Rule 46, Rules of Civ. Proc., for the District Courts of the U. S.; Ill. Rev. Stats. (1937), ch. 110, § 204; Neb. Comp. Stats. (1929), § 20-1139; N.M. Stats. Ann. (Courtright, 1929), § 105-830; 2 N.D. Comp. Laws Ann. (1913), § 7653; Ohio Code Ann. (Throckmorton, 1936), § 11560; 1 S.D. Comp. Laws (1929), § 2542; Utah Rev. Stats. Ann. (1933), §§ 104-39-2, 104-24-18; Va. Rules of Court, rule 22, 163 Va. V, XII (1935); Wis. Stats. (1935), § 270.39.

[8]Howell, 13 So.Cal.L.Rev. 20; Selvin, Proceedings of 22d (1949) annual meeting of The State Bar of Cal., 32.

[9]*Smith* v. *Lawrence*, 38 Cal. 24, 27 [99 Am.Dec. 344]; *People* v. *Mitchell*, 27 Cal.2d 678, 685-6 [166 P.2d 10].

[10]*Story* v. *Nidiffer*, 146 Cal. 549, 552 [80 P. 692].

[11]*Wilkinson* v. *Whitworth*, 169 Okla. 286 [36 P.2d 932, 933], in which the court said: "Authorities may doubtless be found holding that the failure of a party to note formally his exception to the action of the court at the time the action is taken is a waiver of error on the part of the court. Indeed, some courts guard the record as the Gileadites guarded the passage of Jordan. Judges xii, 5, 6. The stranger who said Sibboleth for Shibboleth was slain. But such formalism is foreign to this jurisdiction."

[12]*People* v. *Mitchell*, 27 Cal.2d 678, 686 [166 P.2d 10].

██ It does not have to be in any particular form.[13] ██ It is sufficient if it points out clearly the error complained of[14] ██ The test of its sufficiency is whether it fairly directs the attention of the court to the claimed error. ██ It is sufficient if it apprises the court in some way that the party does not acquiesce in the ruling or action of the court.[15]

██ A liberal rule of construction should be applied in determining whether an exception was taken.[16] Courts exist to do justice. Litigants should be saved from the consequences of an oversight by counsel where it can be done in furtherance of justice and consistent with established rules of law.

In *Horstman* v. *Krumgold*, 55 Cal.App.2d 296 [130 P.2d 721], the court, referring to the amendment of 1907 to section 647 of the Code of Civil Procedure which provided that certain enumerated rulings were deemed excepted to, said, page 299: "The amendment to section 647 of the Code of Civil Procedure has met with much favor and has resulted in improvement in the manner of conducting trials. The old custom of audibly noting exceptions is not generally followed at the present time. The amendment should be liberally construed in order that the rights of litigants be not lost by the failure of counsel to keep fresh in mind those rulings of the court which are enumerated in the amendment. The record before us discloses that plaintiff vigorously opposed the order requiring her to make an election as to the second

[13]*McCreery* v. *Everding*, 44 Cal. 246, 249; *Estate of Piper*, 147 Cal. 606, 608 [82 P. 246]; 4 C.J.S. 664, § 324(3)b.

[14]*McCreery* v. *Everding*, 44 Cal. 246, 249; *Gerry* v. *Neugebauer*, 83 N.H. 23 [136 A. 751, 752]; *Gangi* v. *Fradus*, 227 N.Y. 452, [125 N.E. 677, 679], in which the court said, p. 680 [125 N.E.]: "Appellate courts are not diligent in seeking a way to deprive a party of the benefit of an exception pointing out error, where it appears that the trial justice was fully apprised of the nature of the objection."

[15]*Fitzgerald* v. *Metropolitan Life Ins. Co.*, 90 Vt. 291 [98 A. 498, 506]; *Newton* v. *City of Worcester*, 169 Mass. 516 [48 N.E. 274, 275]; *Snelling* v. *Yetter*, 25 App.Div. 590 [49 N.Y.S. 917], in which the court said, p. 918 [49 N.Y.S.]: "An exception is but the formula of dissent from a ruling, expressed with sufficient clearness and definiteness to raise some concrete point upon appeal. This dissent, and the intention to question the ruling thereafter, are usually expressed by the phrase, 'I except.' The right of review, however, is not lost merely because this technical phrase does not happen to be employed. Any other clear expression will suffice, provided such expression be adequate to convey the idea which underlies all exceptions. That idea is nonassent and nonsubmission to the ruling. . . ."

[16]*McMahan* v. *Walhalla Light & Power Co.*, 102 S.C. 57 [86 S.E. 194, 195]; *Levine* v. *Levine*, 144 Va. 330 [132 S.E. 320, 322].

count and after the noon recess she requested the court to reconsider its ruling. There is much force in counsel's argument that plaintiff's conduct at the trial was equivalent to the notation of an exception to the court's ruling.''

In *San Joaquin L. & P. Co.* v. *Barlow,* 43 Cal.App. 241 [184 P. 899], a witness for the plaintiff, qualified as an expert, testified that charges made for electric current were reasonable. The further proceedings appear in the opinion, page 243: ''On cross-examination of Simpson, after some questions had been asked and answered, relating to the conditions under which the service was to be rendered, and for the stated purpose of reaching the question of what was a reasonable rate, counsel for plaintiff objected that defendant could not go into these matters, on the ground that defendant, by entering into the contract, was estopped to question the reasonableness of the rate. After discussion, the court announced that 'the only issue here is of them furnishing the amount for which they are charging.' Mr. Doherty: 'You mean no further testimony allowed on the proposition of whether or not the rate fixed by them was a reasonable rate under the issue of their pleadings?' The Court: 'I don't see that there is any open question there.' On the ruling thus made, defendant's counsel refrained from further cross-examination on the reasonableness of the rate. To the statement made by the court, and without any direct exception, counsel responded, 'Well, on the ruling of the court, then, I will not ask any further questions on cross-examination as to the reasonableness of the rate.' Although no question was formally propounded, with a ruling thereon from which under the statute an exception would be implied, the record made, as above stated, was equivalent to such formal ruling and exception. (*Pastene* v. *Pardini,* 135 Cal. 431 [67 P. 681].)''[17]

---

[17]In *Davis* v. *Security-First Nat. Bank,* 1 Cal.2d 541 [36 P.2d 649], the plaintiff, after issue joined, made demand for a jury, which was successfully resisted by the defendants. The plaintiff refused to proceed to trial without a jury and the court granted a motion for judgment of dismissal. On appeal the defendants contended that the plaintiff's failure to except to the ruling striking the plaintiff's demand for a jury was a waiver of her objection and an acquiescence in such ruling. The District Court of Appeal held that the plaintiff was entitled to a trial by jury, reversed the judgment, and with respect to the contention that the ruling could not be reviewed because no exception had been taken, said (23 P.2d 1036, 1041): ''The motion to strike was based solely on the ground that the case is in equity and not triable by a jury, and on plaintiff's refusal to proceed without a jury the judgment of dismissal was entered. All of such facts are shown in the judgment and appear in the judgment roll, and consequently so appear in the record before us.

■ Regardless of the theory upon which an exception is required, defendant's conduct was the equivalent of an exception. After the court had granted plaintiffs' motion "that the jury be dissolved," defendant's counsel said: "And may the record show, your Honor, that we are again demanding a jury trial of this matter, and we would ask your Honor to rule on that motion at this time." The motion was denied.

Defendant made it perfectly clear to the trial court that he did not assent to or acquiesce in the ruling, but, on the contrary, that he considered it erroneous; with the court's knowledge he made what attempt he could in the time allowed him to obtain a writ of prohibition; the court had ample opportunity to reconsider and correct the ruling if it deemed it erroneous; defendant unequivocally indicated, and it appears clear that the court fully understood, he intended to make the ruling the subject of appellate review if judgment went against him. There is no mode by which defendant could have more distinctly manifested his dissent from the ruling than the one he followed. It would have been an idle and useless formality to have said "note an exception" or "I except." It would be a reproach to any legal system to hold that defendant did not except to the ruling sought to be reviewed.

We must, therefore, consider the merits of defendant's assignment that the court erred in denying him a trial by jury.

The principles governing the right of trial by jury have been stated recently by the Supreme Court in *People* v. *One 1941 Chevrolet Coupe*, 37 Cal.2d 283 [231 P.2d 832], and need not be repeated at length. ■ The test which deter-

---

*Sichler* v. *Look*, 93 Cal. 600 [29 P. 220]. The only purpose of a bill of exceptions is to enable appellate courts to review errors in law which do not appear on the face of the record, and 'that which is a record already, cannot receive any higher degree of sanction by being made record a second time.' *Parsons* v. *Davis*, 3 Cal. 421, 425.

"Trial by jury in civil actions, unless waived as prescribed by law, is a constitutional right. Section 7, art. 1, Const. of California. If, as we think, the instant case is a civil action, appellant's constitutional right was denied and finally determined by the order which the court made. Such order was an 'interlocutory order . . . finally determining the rights' of appellant, and under section 647 of the Code of Civil Procedure is deemed to have been excepted to. Being a constitutional right, it is to be presumed that prejudice resulted from the denial." The Supreme Court granted a hearing and held (1 Cal.2d 541) that the plaintiff was entitled to a trial by jury and reversed the judgment without mentioning the point that no exception had been taken, evidently thinking, although the point was argued extensively in the briefs and in the petition for hearing and the answer thereto, that it was not of sufficient importance to warrant mention.

mines the right to a trial by jury is whether the gist of the action is legal. It is not, as plaintiffs argue, and as the trial judge mistakenly assumed, whether there existed a right of action at common law identical with that given by the Housing and Rent Act of 1947. As stated in *People* v. *One 1941 Chevrolet Coupe, supra,* page 299: "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action. A jury trial must be granted where the gist of the action is legal, where the action is in reality cognizable at law."

Defendant argues that although the action involves recovery of a penalty under a statute, it is, in reality, one for debt, which at common law was triable by jury.

 The action (writ) of debt was the general remedy at common law for the recovery of all sums certain, or sums readily reducible to a certainty, whether the legal liability arose from contract or was created by statute.[18] Statutory penalties existed at common law, and debt was the

---

[18](a) Andrews Stephen's Pleading, 2d ed. 122, § 76: "The [action] writ of debt lies where a party claims the recovery of a debt, i.e. a liquidated or certain sum *of money* alleged to be due to him. . . . *The cause of action* which is made the basis of the form of action designated debt *is a sum of money due according to the terms of some obligation to pay money,* which may be an oral, a written, an implied contract, or an express obligation imposed by a public law, be it custom, statute, or a city ordinance."

(b) 1 Chitty on Pleading (1872) 108, 111: "Debt is, in some respects, a more extensive remedy for the recovery of money than assumpsit, or covenant; . . . debt lies to recover money due upon legal liabilities, or upon simple contracts, express or implied, whether verbal or written, and upon contracts under seal; or of record; and on statutes by a party grieved, or by common informer, whenever the demand is for a sum certain, or is capable of being readily reduced to a certainty. . . . [p. 111] Debt is frequently the remedy on statutes either at the suit of a party grieved, or of a common informer. *In some cases it is given to the party grieved at the express words of a statute, as . . . against a tenant for double value for not quitting in pursuance of a notice to quit given by his landlord.* And if a statute prohibit the doing an act under penalty or forfeiture to be paid by a party grieved, and do not prescribe any mode of recovery, it may be recovered in this form of action, as *treble the value of tithes* not duly set forth, or *treble the amount of damages* incurred by extortion." (Italics added.)

(c) Archbold, Plead. & Evid. (Civ. Actions)(1837) p. 17: "If an act of parliament inflict a certain penalty for a particular act, *an action of debt will lie for the penalty,* if no other remedy be specified in the statute; for the law implies that by the fundamental contract of society, the offending party is bound and hath virtually agreed to obey the direc-

appropriate action for the recovery thereof where no other remedy was specified, because the money due under such statute gave rise to a debt, the underlying theory being an implied promise which the law annexed to the liability.[19]

Obviously, a statute such as the Housing and Rent Act of 1947, placing a ceiling on rents and permitting the recovery of treble the amount of any rental overcharges, did not exist at common law. While such a statute was unknown to the common law, the liability is one created by statute. ██ The treble damages recoverable under the act are in the nature of penalties.[20] ██ The issues involved in the claim for treble damages are legal; they grow out of a claim for moneys due and owing—in the nature of a suit at common law—and the court which determines this issue sits as a court of law.[21]

---

tions of the legislature, and pay the forfeiture incurred, to such persons as the law requires.''

(d) 3 Bl. Comm. (London ed. 1857) 162, 167-9: ''From these *express* contracts the transition is easy to those that are only *implied* in law. Which are such as reason and justice dictate, and which therefore the law presumes that every man has contracted to perform; and upon this presumption makes him answerable to such persons as suffer by his non-performance. Of this nature are, first, such as are necessarily implied by the fundamental constitution of government, to which every man is a contracting party. And thus it is that every person is bound and has virtually agreed to pay such particular sums of money as are charged on him by the sentence, or assessed by interpretation of the law. For it is a part of the original contract, entered into by all mankind who partake of the benefits of society, to submit in all points to the municipal constitutions and local ordinances of the state, of which each individual is a member. Whatever therefore the laws order anyone to pay, that becomes instantly a debt, which he has beforehand contracted to discharge.''

(e) Shipman, Common-Law Pleading 137: ''Debt is also a proper remedy . . . to recover a specific sum of money due by virtue of a statute, where the statute prescribed no particular form of action.''

[19]*State* v. *Poulterer*, 16 Cal. 514, 525; *United States* v. *Lyman*, (1 Mason 482) 26 Fed.Cas. No. 15,647; *Hepner* v. *United States*, 213 U.S. 103 [29 S.Ct. 474, 53 L.Ed. 720, 721]; *United States* v. *Jepson*, 90 F. Supp. 983, 984-5; *United States* v. *Mesna*, 11 F.R.D. 86, 87; *Miami Copper Co.* v. *State*, 17 Ariz. 179 [149 P. 758, 760-3, Ann.Cas. 1916E 494].

[20]*United States* v. *Hart*, 86 F.Supp. 787, 789; *Porter* v. *Warner Holding Co.*, 328 U.S. 395 [66 S.Ct. 1086, 90 L.Ed. 1332, 1339]; *United States* v *Friedland*, 94 F.Supp. 721, 723. *Cf. Heesy* v. *Vaughn*, 31 Cal.2d 701, 709 [192 P.2d 753]; *Miller* v. *Municipal Court*, 22 Cal.2d 818, 837 [142 P.2d 297]; *Garcia* v. *Ebeling Motor Co.*, 89 Cal.App.2d 688, 692 [201 P.2d 854].

[21]*Porter* v. *Warner Holding Co.*, 328 U.S. 395 [66 S.Ct. 1086, 90 L.Ed. 1332, 1339]; *United States* v. *Hart*, 86 F.Supp. 787, 789; *United States* v. *Strymish*, 86 F.Supp. 999, 1000; *United States* v. *Mesna*, 11 F.R.D. 86-7; *United States* v. *Jepson*, 90 F.Supp. 983, 985; *United States* v. *Friedland*, 94 F.Supp. 721, 723.

■ A jury trial was a matter of right in the common-law action of debt, and consequently it exists in all civil actions under modern practice which formerly would have fallen within this form of action. (31 Am.Jur. 566, § 17.) Although the claim for damages arises out of and is based upon statute, it is a claim grounded in debt. ■ ". . . [W]hen a federal statute embraces a common-law form of action, that action does not lose its identity merely because it finds itself enmeshed in a statute. ■ The right of trial by jury in an action for debt still prevails whatever modern name may be applied to the action. To hold otherwise would be to open the way for Congress to nullify the Constitutional right of trial by jury by mere statutory enactments. It is by such methods that courts lose their power to enforce the Bill of Rights." (*United States* v. *Jepson*, 90 F.Supp. 983, 986.) ■ A trial by jury of the issues raised by a claim for treble damages under the act is a matter of right.[22]

The cause was tried on an amended complaint and the answer thereto. Defendant contends that the amended complaint does not state facts sufficient to constitute a cause of action. We have considered the point, and although the amended complaint is not a model pleading, we think the point is without merit. However, in view of the necessity of a retrial, plaintiffs should be permitted to amend if they be so advised.

■ The judgment was entered on October 5, 1950. On December 20, 1950, the Housing Expediter, acting under the authority of section 204(j)(3) of the Housing and Rent Act of 1947, as amended,[23] decontrolled rents in the city of Los Angeles where the property involved is located.[24] Defendant contends that decontrol "voids the judgment." He relies on the principle that repeal of a statute creating a penalty at any time before final judgment extinguishes the right to recover the penalty.[25] He argues: section 204(j)(3) authorizing the Housing Expediter to decontrol contained no saving clause; section 204(f), providing for termination of rent control (1) on automatic expiration of the act, (2) by proc-

---

[22]*United States* v. *Friedland,* 94 F.Supp. 721, 723-4; *United States* v. *Mesna,* 11 F.R.D. 86, 87; *United States* v. *Jepson,* 90 F.Supp. 983, 984-5; *United States* v. *Hart,* 86 F.Supp. 787, 789; *United States* v. *Strymish,* 86 F.Supp. 999, 1000; 35 Minn.L.Rev. 304.

[23]50 U.S.C.A. App. § 1894.

[24]15 F.Reg. 9238.

[25]*Lemon* v. *Los Angeles T. Ry. Co.,* 38 Cal.App.2d 659, 671 [102 P.2d 387].

lamation of the President, or (3) by resolution of both Houses of Congress, contained a saving clause that as to rights and liabilities incurred prior to the termination date the act would remain in force for the purpose of sustaining any proper action with respect to any such right or liability; therefore, Congress intended that when a city is decontrolled by the Expediter under section 204(j)(3), existing causes of action fall with the decontrol order. The argument is unfounded. The Supreme Court of the United States has held that the saving clause contained in section 204(f) is applicable to section 204(j)(3) and that an action of this character may be maintained after decontrol by the Expediter.[26]

Other errors assigned by defendant are not likely to occur on a retrial and need not be discussed.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied January 14, 1952, and respondents' petition for a hearing by the Supreme Court was denied February 25, 1952.

---

[26]*United States* v. *Moore*, 340 U.S. 616 [71 S.Ct. 524, 95 L.Ed. 582, 585]; *United States* v. *Valenzuela*, 95 F.Supp. 363, 365, in which it was held that an action for treble damages could be maintained after decontrol of the city of Los Angeles by the Expediter. See, also, *Woods* v. *Wayne*, 4 Cir., 177 F.2d 559, 560; *Woods* v. *Richman*, 9 Cir., 174 F.2d 614, 615.